Inc. et al. Good morning. May it please the court, Justin Deloia on behalf of plaintiffs. This is not a case about the failure to disclose unrealized or speculative future events, but rather existing facts that carried significant and obvious risks, namely that Lumen decided, affirming affirmatively, to discard thousands of miles of old copper telecommunication cables covered in highly toxic lead across the United States. And just to be clear, the risks associated with that brazen activity continue to play out to this very day. In this decision below, the district court resolved several hotly contested questions of fact. At the heart of this controversy, in defendant's favor, drew a series of inferences contradicted by a number of well-plugged facts, and then relied on those foundational findings to conclude that plaintiffs failed to plead a misstatement or scienter. Did you tell the district court or the magistrate judge that you could in fact plead that plaintiffs should have known that they couldn't retire the cables in place at the time? If you were given the opportunity, you could plead that? If we were given the opportunity, we would certainly be able to plead that retiring the cables in place carried significant risks, and that it was not safe to do so at the time. And we certainly said in our... And that that was known in the industry and that sort of thing, so they should have known that too. I think that we have pled... We would be capable of pleading substantial evidence to show that that was the case. I can't speak for what the knowledge was in the industry, but we can certainly plead evidence showing that that was the case. We ask that this court reverse the decision below because the foundational findings made by the district court pull out basic principles of 12B motion practice and impose harsh new requirements for pleading securities fraud claims far beyond what is already required by the PSLRA. So that was said. Look, we need to be able to... If that's your problem, we need to be able to plead this, and we can do it. Yes, we believe that we would be able to plead new... No, did you do that? Did you tell the court that you could do that? Yes, we did. So first of all, in our motion to dismiss briefing, we signaled that we wished to amend if we needed to do so for at least motive allegations. And then when we saw that the district court decided to depart from the standard practice of allowing a party to amend in cases that are subject to heightened pleading standards, we said that we wished to amend in order to plead additional and new facts that would upend the foundational findings of the district court. Were you specific about that? We said that in words of one syllable in our objections. No, it's specific about what the new facts and things would be. Sometimes people will offer an amended pleading just right then to show, and some people will discuss what they could do. We could easily overcome... We think you have a misunderstanding and this is not required, but if this were required, we could easily meet this if you give us a chance. Did you say that and explain that you could specifically meet that? We signaled to the district court that we would be able to plead facts that upend the foundational finding. But you didn't say what they were. I mean, you basically traveled under the idea in your objections to the magistrate judge's report and recommendation that, well, we should get another chance to plead because we've only had one chance to plead, or we haven't been dismissed but one time if you were to go that route. But you never did what the chief judge is asking, which is to say, here's exactly what we would plead if we... Or here's a proposed pleading. I mean, I don't know that you have to do that, but you didn't do anything in specific. We did not attach a proposed pleading and we did not walk through all the facts, especially given the fact that we only had 14 days to file our objections. But I think that there's two issues here. One is that the foundational findings hinged on this notion of the cables being safe. And that could potentially be relevant to the misstatements relating to the cost savings of removing the... Or transitioning from copper to fiber. However, there are representations in this case that Luhman recycled all copper network assets upon retirement. And that hinges not at all on any element of risk. We allege that those misstatements were false and misleading because Luhman did not, in fact, retire the cables in place. But did they recycle copper? Our understanding is that they did recycle copper, but they simply passed over the cables that were covered in lead and left thousands of miles of them across the United States. But that doesn't mean the statement that they recycled copper when they decommissioned it, or whatever the right word is, was false. It just means they did that when they retired copper wire, but they didn't retire all their copper wire. I mean, in other words, that's not necessarily untrue. Well, I would respectfully submit that the statement at issue is non-aspirational and unqualified. But even if it were... I mean, I know you say that, but your briefing and the complaint, it's littered with things like, well, we aspire to protect the environment. I mean, this sort of corporate mumbo-jumbo is said all the time. We want to protect our employees. And you say that those are inconsistent things. You can't protect the environment and protect employees by doing... I mean, you're reading a lot into what was not said. Understood, Your Honor. Respectfully, those are separate statements. The representations that copper assets were recycled upon retirement were non-aspirational. Right. But I mean, they're also true to the extent they did it. They didn't say... But those are half-truths, and the Supreme Court has made clear that half-truths can still be misleading. And that's kind of our point, because even if they were generalized about the types of practices it attempts to adhere to, making an affirmative decision to litter trash thousands of miles of toxic waste across the United States is incompatible with even attempting to do so. But that's not... Come on. The decision among the industry was to leave it in place because it was safer that way until these Wall Street Journal articles came out and the exposés. That's not littering it around the country. That's a finding that we take serious issue with, and we would be prepared to plead facts that that was not the case here. We do not believe that it was safe. We believe that there are facts that we can plead that can show... But you didn't plead it before you got this complaint dismissed. We did not, but we believed that the pleading that we had was sufficient at the time, and we're not required to tell the court what alternative facts we may plead in the event that it may dismiss our complaint. Once it was dismissed, then we had to go back to the drawing board. But we never had that opportunity to begin with, because the district court dismissed with prejudice and closed the case before we even had an opportunity to ask for leave, even though we wished to do so if it was necessary. And on the representations that we were just speaking about, about retiring or recycling retired copper, I would also note that those representations were accompanied consistently by a statement that those practices were designed to ensure the proper disposal of hazardous waste, which is a term of art that we specifically allege encompasses lead. So investors had every reason to believe that Lumen was at least attempting to remove and recycle any hazardous waste on that copper. Stated differently, no reasonable investor would believe that it chose to affirmatively simply leave it behind and not recycle it as it stated that it did. As for the... Did you tell the district court that the recommendation to dismiss with prejudice was wrong? I'm sorry, Your Honor? Did you tell the district court that the recommendation by the magistrate judge to dismiss with prejudice was wrong? Yes, absolutely. In our objections to the report and recommendation, we had an entire section at that said that dismissal should be without prejudice so that we could at least seek leave to amend. So the idea that you forfeited that argument is just not true? Well, I would say, first of all, we are not required to request leave before we even know our complaint is being dismissed. No, the argument that you forfeited dismissal versus with or without prejudice. Right, but that hinges on the notion that we never requested it in the first place. And... Did you say the recommendation is wrong from the magistrate judge because it says with prejudice? District court, please do not do with prejudice because that's legally wrong. Yes, we did. And we said that we plan to plead additional facts to cure the deficiencies identified by the district court, especially given that this is a case subject to heightened pleading standards, which are often very difficult to get through the pleading stage on the first round. As for the cost benefit statements, the court should reverse the district court's dismissal of those statements because the fact that led comprised only 5% of the legacy network confuses the central issue in this case. And the conclusion Luman had good reasons to believe the cables were safe in place is wholly unwarranted and legally irrelevant. Assuming, arguendo, that we were to agree with you that the district court erred in dismissing this case with prejudice, should we reach any of the remaining issues or not? I think if you were inclined to reach the other issues, you could potentially obviate the need to address the dismissal with prejudice. But if you simply only addressed the dismissal with prejudice, you could vacate the judgment, modify the dismissal to be without prejudice and reverse or remand for further proceedings. But why would it be a remand? Why wouldn't it just be a, I mean, I guess, remand for the district court to change it? We could do that, couldn't we? Yes, I believe so, Your Honor. So there wouldn't be a remand then? Correct. Okay. But as for the focus on the fact that these cables only comprised 5% of the entire legacy network, I believe that that critically misapprehends one of the central issues in this case. And I keep coming back to the fact that all that matters is whether the statements were false or misleading. The singular focus on this topic loses sight of that question for two distinct reasons. First of all, the statements did not speak about the cost savings of retiring the entire legacy network. It only talked about retiring the portions that were displaced by fiber. We allegedly explained that that took place in metropolitan areas and also alleged those are the areas that had the highest concentrations of lead cables, some of which contained over 50%, not just 5%. Second of all, it doesn't follow that only 5% of the anticipated costs would be offset. Mishandling 5% of a nationwide network could certainly give rise to costs that offset materially the proposed savings, if not eclipse the entire amount of savings. We allege that that was, in fact, the case here. Equally untenable is the district court's conclusion that Lumen had a good reason to believe the cables were safe where they lied. We've already explained in our briefs why the sole support for that conclusion says nothing at all about Lumen and is directly contradicted by a variety of other well-plaid facts. Ultimately, what Lumen believed is irrelevant because whether a statement is misleading is assessed using an objective standard that measures what is said against the true state of affairs at the time. Here, we allege that lead is classified as a toxic waste by the EPA because it has been found by the EPA to leach particles from its surface over time. We also allege that many of the cables that were abandoned by Lumen hang aerially without conduit and are exposed to the elements. On top of all that, we also allege in words of one syllable that abandonment is not permitted by the RCRA, the Governing Waste Disposal Law at issue here. Notably, since I only have a minute left here, I would also say that plaintiffs respectfully submit that Lumen's admissions to the federal government, and there were many of them over the years, evinced its own scienter irrespective of the outcome of the scienter allegations for the individual defendants. Holding Lumen liable under these circumstances would not be inconsistent with this court's previous decision in Southland for two reasons. One, Southland simply prohibited looking to the state of mind of employees throughout the company that had no involvement in the creation or issuance of a misstatement. But here, Lumen made many of the misstatements at issue. Secondly, Southland was not confronted with facts evincing a corporate defendant's scienter, and this court should not turn a blind eye to it, especially in light of Teleb's instruction to consider all evidence holistically as part of the competing analysis. In fact, holding Lumen liable is entirely consistent with the Supreme Court's scienter analysis in Matrix Initiatives, which was issued in 2011 after it already issued the Teleb's decision. And in that decision, the court found that the corporate defendant, its issuance of an unfounded press release, supported the inference of scienter there. And with that, I will reserve the rest of my time for rebuttal unless you have any other questions. Thank you. Thank you. Good morning. Lyle Roberts with A&O Sherman on behalf of the Lumen defendants. Um, this is the exact case that the Private Securities Litigation Reform Act was designed to prevent from proceeding beyond the pleading stage. I say that because when you step back and look at the procedural and factual history here, it's obvious what happened. In 2023, the Wall Street Journal published a series of articles suggesting that there might, might be significant health and environmental risks for the general public associated with telecommunications cables. There was virtually no mention of Lumen technologies in these articles, and the Wall Street Journal did not claim that it had tested any cables that are actually owned by Lumen. Nevertheless, the plaintiffs bar thought they saw an opportunity here. They immediately filed securities claims against every major U.S. telecommunications company, including AT&T, Verizon, and Lumen Technologies. And here is what the plaintiffs allege was the fraud in this case. And it's found in the nature of the case section of their complaint at paragraph eight. The plaintiffs allege that because of the existence of these lead sheath cables, quote, Lumen stockholders were misled about the enormous risks and financial exposure that the company faced, unquote. The plaintiffs have two insurmountable problems with this allegation. First, prior to the Wall Street Journal articles, there are no well-planned allegations that anyone viewed lead sheath cables as creating a significant health and environmental risk for the general public. To be sure, Lumen and its investors knew that lead posed health risks under certain circumstances, that the telecommunications industry historically used lead sheath cables, and that telecommunication workers who handle these cables have to do so carefully. Assuming, Arguendo, that there's a deficiency in the pleadings about that, um, shouldn't they have an opportunity to try to rebut what you just now said through pleading, which is second pleading? Well, I'm happy to turn right to that issue, Chief Judge Allrod. The plain facts here are they have waived any request to amend. There is... Forfeited? Well, I would say waived, but I'm happy to use the word forfeited as well. Intentionally relinquished a known right? I think that's correct. All right, we'll explain how that happened. I can. They simply didn't include this in their... They did not include any request for leave to amend until they made objections to the R&R created by the magistrate judge. Yeah, but that's enough, isn't it? No, it's not, Your Honor. There's...  Well, because there was binding Fifth Circuit case law to the contrary. So we cite in our briefs, this court's decisions in Connor v. Kelly and in K Investments v. Gass. And in both of those cases, this court found that it's insufficient to raise a request for leave to amend at the time of the objections as opposed to in your opposition to the motion to dismiss. And the reason for that is not really all that surprising, right? Because the reason why you need to raise it in your opposition to the motion to dismiss is so that we, the defendants, have an opportunity to argue that, in fact, there should be no a grant of leave to amend here. So that the magistrate judge can consider that and make a ruling, present that... Did you raise that in your motion to dismiss? Did you seek dismissal with prejudice? We did indeed, Your Honor. So that we can respond, the magistrate judge can put it into her R&R and then the district court judge can consider it. None of that happened. There was no... And did not give any reason for not, for the reason for what it did. Well, I think that actually, again, under the circuit precedent, the district court judge here acted completely appropriately, which is that he did not consider a new argument raised for the first time in objections. But he didn't say that. He didn't say, I'm going to not rule on this because I consider it to be a new argument. He just ignored it. So that's the problem. Because it's, if you don't give an explanation for a denial of leave to amend or why you're doing with prejudice, then that's, you haven't given an explanation on it and that's the error. But that's not required. Again, under Fifth Circuit law, Chief Judge Elrod, there's ample precedent that says it's unfortunate, perhaps, if a judge does not explain exactly why it is. No, no, no. What do you do with this AAPS case that came down last year, 2024, I guess, and it talks at some length, page 394 of the Federal Reporter 103, fourth, about why it's really not like unfettered discretion to consider whether with prejudice or without prejudice. The district court's got to explain. And here, if the district court had said, well, they forfeited this. They didn't ask. They didn't engage in the motion to dismiss. Therefore, I don't have to do it. I'm going to dismiss it with prejudice. We don't have any of that. We don't have any of that. And the other side of that is, if the district court actually took the magistrate judge's recommendation, the reasoning that was given for dismissing with prejudice, because the magistrate judge talks about this. This is a hindsight securities fraud case. This is exactly what PLSRA envisions not allowing to go forward, all that. If the district court engaged with that analysis and said, with prejudice for that reason, well, that would be a completely different thing. Because at that point, the district court would have engaged the issue. And arguably, it would not have been waived or forfeited. We don't know. Well, you're absolutely right, Judge Wilson, that, of course, the judge did not describe his exact reasons around agreeing to dismiss with prejudice. I don't think he gave any reason, other than adopting the magistrate judge's report. That's correct. But I think I would suggest, however, perhaps that the magistrate judge didn't say we should dismiss with prejudice, because, well, the plaintiffs forfeited this by not engaging it in the motion's papers. The magistrate judge said, this is a hindsight securities fraud case, and the claims just don't amount to anything. I would suggest, Judge Wilson, that it would be a little odd for the magistrate judge to engage on an issue that the plaintiffs haven't raised. So if they have not, and they're looking at it. Well, but the magistrate judge did recommend dismissal with prejudice and engaged on that issue. It did. The magistrate judge's report and recommendation didn't say, this is forfeited, so therefore it should be with prejudice. It didn't. But again, it went on the merits, so to speak. Again, you're absolutely right. And if the district court adopted that, then I don't think you can say it's forfeited, because the issue was engaged in their objections to the magistrate judge's report and recommendation. And if the district court picks that up and treats the issue, I think generally our law says that it's not forfeited. At that point, we can reach it. It's before us. Yes, but that's hypothetical, Your Honor. It's hypothetical because the district court didn't explain anything here. But we're pouring these people out of court preclusively based on the assumption that, well, maybe they forfeited it in the response to the motion. Well, I guess what I would disagree with you, Your Honor, is that I don't think it's an  They did, in fact, not raise any objections. Well, you started out by saying it was a waiver, a known relinquishment of a right. They didn't do that. They didn't say, we're not contesting whether it should be prejudice or not prejudice. They might have forfeited it by not engaging it. But that's different. Well, again, Your Honor, I don't want to quibble over the words waiver versus forfeited. No, it's not a quibble. Because if you waive something, it may determine whether we can reach it or not. If it's forfeited, we may reach it anyway. There's law developed on all of that also. Well, again, Your Honor, I would point to the case law that we have in our brief, the Two Fifth Circuit cases, which have said that it is, in fact, constitutes a waiver. I don't believe those cases make any distinction between whether the district court judge recognizes it as a waiver or a forfeit or not. And so in that sense, it would be a little odd to say that if a plaintiff just doesn't make an argument, that somehow they have not forfeited that argument. Because, of course, we have to have the opportunity to respond. And we did not receive that opportunity, right? Because they did not include this. They told the magistrate judge they wanted a chance to replete. They did not, Your Honor. They did not say in the alternative, we wish to replete. I thought they said that. Your friend on the other side said that during the question. They did not, Your Honor. They never said, and if we're wrong, and if you don't agree with us, we want a chance. They never said that. They did not, Your Honor. In fact, I'll tell you exactly what they point to and what they did say in their opposition motion. It's contained in a footnote, footnote 12 of their motion to dismiss. And it says, the entirety of the sentence is as follows. The inference of scientia can be bolstered when, as here, stock is awarded based on achieving predetermined performance conditions. And plaintiffs are prepared to amend to allege precisely how Luman's executive compensation did so to the extent necessary. Are prepared to amend. Prepared to amend. But what they did not do here, of course, is request leave to amend if the case were dismissed. And again, I think that the circuit's precedent here is quite clear that that's what they needed to do in their opposition. And they couldn't wait to the objections to do that. And with all due respect, Judge Wilson, I just believe that it's asking a lot of a magistrate judge, or even a district court judge, to basically list out all the things plaintiffs haven't argued. And that's what happened here. They did not argue that they should not leave. No, that's not. I don't believe that's a fair characterization of the question. But anyway, go ahead. Well, again, Your Honor, I mean, it's simply not there. As I've read it to you, they did not make a request for leave to amend. OK, they didn't request before the district court. But I mean, before the magistrate judge. But they did tell the district court that it would be error to dismiss without giving them the chance. I'm not sure whether they framed it in the way of error, Your Honor. But yes, they did request in their objections that they should not leave to amend. But again, it's simply too late. We needed the opportunity in front of the magistrate judge to make arguments why that wasn't correct for the magistrate judge to then make that decision in her R&R. That's what didn't happen. Why can't the district court consider a new point in the district court's decision making? It's a new point, then. And the district court can consider it. Well, again, I think there's legion of law from the circuit, Your Honor, that you cannot raise new arguments in your objection. Well, if the magistrate judge does something that is contrary to the statute and the understanding of the statute in its recommendation, the district court can say, OK, we're now here. I can look at this and decide what should happen next. Certainly, Your Honor. But what it cannot do is consider new arguments, new requests haven't been made before. Well, the objection is what's being raised at that time. Sure. The objection raises the point. And the objections can go through exactly what the magistrate judge did wrong here. What the objections can't do is raise new arguments, new requests that weren't before the magistrate judge. No, but it's the magistrate judge that has caused the new objection to exist by what the magistrate judge did. Until the magistrate judge says dismiss with prejudice, they don't have any reason to object, because she is doing that. And then that's when it's triggered that they need to say, oh, my goodness, no, that's not correct. Well, I guess I would disagree in the following sense, Chief Judge Ellirock, which is that it's actually quite standard in these cases and in all cases to make your, if you're facing a request for dismissal with prejudice, to ask that you be given leave to amend if the court doesn't believe the allegations are sufficient. That's pretty standard. They just didn't do it here. That's true. That is what people do most every day, which is why we don't litigate this a lot. Right. But you had always said with prejudice, right? Correct. Is that right? From the beginning, everyone knew that your request was dismissal with prejudice. Correct. Or I'm not putting words in your mouth. Is that right? Yes, that's correct. And so. And they never engaged with your argument. That's true. That's a friendly question. Yes, yes. No, that's absolutely. And I'm agreeing with you, Your Honor. Yes, that's absolutely true. And I guess I would go on, not to exhaust this topic of the waiver of forfeit. I would also go on to note, as Judge Wilson, as you pointed out, there's never been any actual presentation of what facts, what allegations would have been made. Well, let's move to that. So more on the merits of the dismissal. The plaintiffs wouldn't get a chance to replead if it was futile to do so. Or if, for example, they just couldn't. They'd had several times chances to state their best case. I'm not sure if they have or haven't had that chance. But if it was futile to do so, statute of limitations, or they can't meet the PLRA's pleading standards. Talk a little bit about that. I mean, you asked for a dismissal with prejudice. So what supports a dismissal with prejudice here? What's the fatal flaw they can't cure? So I think there are two fatal flaws. First, prior to the Wall Street Journal articles, as I noted, there are no well-pled allegations that anyone viewed lead-sheet cables as creating a significant health or environmental risk for the general public. Second, the allegations in the Wall Street Journal articles have never been substantiated. No government agency, either before, during, or after the class period, has determined that lead-sheet cables pose significant health and environmental risks to the general public. Or that Lumen must remediate the small portion of lead-sheet cables that are contained in its copper network. So all of the plaintiffs' talk about supposed enormous risks and financial exposure that Lumen faces over its lead-sheet cables, it's entirely hypothetical. And here we are, we're sitting nearly three years after these Wall Street Journal articles, and this risk has never materialized. So I think under those circumstances, it's not surprising at all that the magistrate judge determined that this should be dismissed with prejudice. And also that the district court judge agreed with that. Because there aren't any well-pled factual allegations that would support the theory of fraud here at all on this issue of the supposed risks that were not disclosed. And really, the court needed to go no further than that. I'm happy also, though, to address a few other specific pleading deficiencies, some of which were raised by my opponent here today. I would turn to Sienter, which I think is perhaps the most efficient part of the complaint. As the district court correctly recognized, the complaints bereft of any individualized allegations of Sienter. It's certainly nothing that would create this required strong inference that each of the individual defendants here knew or were severely reckless in not knowing that Lumen faced significant risks and liabilities related to its lead-sheet cables. Indeed, the complaint doesn't even allege that Sienter management ever discussed the issue of lead-sheet cables, never mind made a specific decision to leave the cables in place or received any information about risks and liabilities that were contrary to the public statements that the company made. And I think the plaintiff's reply brief at page 15-17 illustrates just how deficient these allegations are. And if you'll beg my indulgence for a second, I'd just like to go through what they allege specifically as supports Sienter here. First, plaintiffs allege that Sienter management spent time thinking about the company's transition from copper cable to fiber cable. Second, plaintiffs allege that the CEO of Lumen visited a museum that talked about the company's historic use of lead-sheet cables. Third, plaintiffs allege the individual defendant signed lead paint disclosure forms that told them of the dangers of lead paint in their homes. Fourth, plaintiffs allege that some of the individual defendants signed SOX certifications, testing to the accuracy of their public statements. And finally, plaintiffs allege Lumen's copper network was important to the company. That's it. Missing from this list, of course, are any actual particularized factual allegations about the actual subject of the case, which is to say the risks and liabilities supposedly associated with lead-sheet cables. And plaintiffs also don't provide any cognizable motive here. For the individual defendants to engage in this supposed fraud. And that's important because, Chief Judge Elroy, as you held it in Pier 1 decision, well-plaid motive allegations are, quote, critical, unquote, to a successful claim for securities fraud. So as courts often say when they're evaluating Sienter allegations like this, zero plus zero plus zero still equals zero. It doesn't matter if these allegations are viewed individually or holistically. They can't possibly create the required strong inference of Sienter here. And certainly plaintiffs have not identified anything they would allege. If we agree with you that this is inadequate, but we're concerned that it should have been without prejudice, then would we just decide that issue and then not remand, but they would have to bring a new suit? Um, I think certainly the court could take that step. Although I guess I would note that we believe, of course, that the bachelorate judge and the district judge were correct in their assessment of this insufficiency of all of Well, I guess another way to ask that question is, do we need to pass on the sufficiency of the complaint as it was? Uh, even if we agree as a panel, okay, that it should have been without prejudice, should we nonetheless pass on the sufficiency of the complaint? Does that, without doing so, do the parties know what to do or not know what to do? Or can you proceed? Or do we care? Well, I think the parties would know what to do or not to do, as you put it, Your Honor. But certainly perhaps some guidance from this court might help the lower court in making, you know, making further determinations in the case. On scienters? On, for example, the pleading of scienter, the pleading of falsity, the pleading of loss causation, which are the three issues here in this case. Let me go on to note just a couple of items about falsity here. I think that there is a kind of disconnect and a kind of rewriting of the complaint, which has happened here in the appellate briefs of this case, where the, despite the fact that the complaint is set around the supposed failure to disclose these enormous costs that the company supposedly would incur, which it in fact did not know about, it has never in fact incurred, there is some discussion now that it's really about Luman's failure to disclose that it had these lead sheet cables at all, and that they had decided, I think is the word that was used here today, not to remove the lead sheet cables. But really that's just, A, a rewriting of the complaint, and frankly doesn't make any more sense than the sort of original theory here, because first, Luman, and I think this is important on the issue of falsity, never made any statements about its lead sheet cables at all, never mind statements that could have been rendered misleading somehow by the failure to disclose that these cables remained in place. And second, it's hard to see how there could be any material omission, that is to say something that's significant to investors in investing in Luman, if a company to this day has never been forced to engage in any kind of costly removal. So just wanted to note that this kind of somewhat new theory that's now brought on an appellate level, I don't think holds any water either. Getting back just for a minute, I'm just making a comment, not really asking you a question, but on the waiver versus forfeiture issue, I acknowledge that our court from time to time has been inconsistent on using those two words way too often, particularly a few years ago. We often said waiver where we should have said forfeiture. That's not your fault. That's the court's fault for being imprecise, as the other judges have pointed out. There's a difference between those two terms, but I think we should not necessarily look at an older opinion that says waiver when we really should have said forfeiture. That's just something that we need to be more careful about. And I think we've done a better job of that in the last very few years, but for a long time we didn't. I appreciate that comment, Judge. Now then, you understand why, of course, we use the word waiver as that is what was found in the cases. But thank you for that foundation. And I'll concur in Judge Smith's statement also. That's on us, not you. And I'll concur also. OK, is that for you?  You've saved time for rebuttal. Thank you, Your Honor. I know a decent amount of time was spent on the issue of the dismissal with prejudice, so I plan to focus on that in my remaining time unless the court has any other questions. I think there's a few things that were notable about my colleague's argument. Number one, they admitted that we said that we wished to amend in our motion to dismiss briefing before we even got a decision on the motion to dismiss. In that footnote, that one sentence? In the footnote? That is correct. That's it? You said we could show that? Could you also show scienter? And what would you say about scienter? Well, what I would say, Your Honor, is that we didn't even need to include that in our briefing because the default standard is to allow parties to amend in cases that are subject to heightened pleading standards. But we did so anyway because we felt so strongly that we would be able to remedy any defects with regard to scienter. You thought that you would get a do-over even without even asking? Well, I think that that is what the law says. And so we should be entitled to rely on the state of the law. When were you going to bring that to the court's attention? In my experience, every securities defendant asks the court to dismiss with prejudice. And to the extent the court is inclined to do so, the opposing party, the plaintiffs, have the opportunity to at least request leave to amend to obviate or avoid a dismissal with  But that was never given here. The case was simply closed automatically upon the affirmance of the report and recommendation. That happens a lot whenever district judges review magistrate judges' reports. Because our magistrate judges do thorough jobs. I would generally agree with that, Your Honor. And perhaps there are many parties who have no issue with that. But we do, especially in a case that's subject to heightened pleading standards. So no, but I'm just saying, if it was going to be closed right then, when did you think you were going to have that chance? We didn't know, walking in, that our complaint would be dismissed. We thought that we brought a sufficient complaint in the first instance. Once we learned that— But you got a motion to dismiss with prejudice. The other side requested that relief from the court. That is true. And expressly requested it. And I know you opposed the dismissal. But did you oppose with prejudice part? We opposed the dismissal and we signaled that we were prepared to amend in the event that we needed to do so. And then, before the official dismissal order was entered by the district judge, in response to the report and recommendation, we certainly laid out that we wish to amend to cure the pleading deficiencies. And I would note that when the court asked my colleague what was missing in the complaint, all that he was able to point to were factual deficiencies, not a legal bar. What he quoted from footnote 12 was that you were, quote, prepared to amend. Is that what footnote 12 says? That is correct, Your Honor. So, what would you say about Sienter? Why should you get a do-over? What I would say about Sienter is that we believe that we can include new facts that show that the executives were aware that the lead cables were being retired in place. And that they knew that there were significant risks associated with that activity beyond what we have already included in the current complaint. Which would upend the foundational findings used by the district court to say that there were no misstatements or Sienter in this matter. And one other matter before my time is up that I do want to address. In a defendant's argument, they said that investors were well aware that these cables existed and they knew that there were risks associated with them. I really think that that is a bridge too far in this case. We've laid out all the law surrounding the truth on the market defense in our reply brief. But I would stress that we have numerous cases where we've laid out all the law surrounding Sienter's independent sources including industry experts, insiders, lifetime regulators who said we had no idea that lead cables existed in the network. Much less that they were being abandoned in place. And so I don't think that it would be proper to reach that conclusion on a motion to dismiss at the pleading stage or use that as any basis to say that we wouldn't be able to amend sufficient facts in an amended pleading. Thank you. We have your argument. Thank you, Your Honor. This case is submitted. We appreciate the arguments. We're going to take a 10-minute recess before considering the remaining cases of the day.